R. C. Foster, Special Judge,
delivered the opinion of the court.
Upon the 22d day of September, 1837, being the last day of the term of the chancery court, at Columbia, Benson, Hunt & Patterson recovered a judgment on motion against the plaintiff in error, Porter, sheriff of Maury county, for the money and costs of suit mentioned in an execution, which issued from the March Term, 1837, of said chancery court, in favor of the defendants in error, Benson, Hunt & Co., against Looney, upon a final decree, rendered in the chancery court, which execution came into the hands of the said Porter, sheriff, upon 15th May, 1837, but was not returned as directed by the act of 1803, c 18, § 1.
From the judgment so rendered, Porter prosecuted an appeal in the nature of a writ of error, to this court, and the question made in argument, and submitted for the decision of this court, is, had the chancellor power and jurisdiction to render such judgment?
*521 By (he second section of the act of (1787, c 22, in all cases where decrees may have been made in equity in any of the courts in this state, or may thereafter be made, the writ of execution against the body, as well as the property of the defendant is given in the same manner, as in the courts of law.
Upon the decree rendered by the chancellor at the March Term, 1837, in favor of said Benson, Hunt & Co. against Looney, the -execution was lawfully issued, and when placed in the hands of the sheriff, subjected him to the same duties and responsibilities, as if issued from a court of law. By the act of 1803, c 18, § 1, if any sheriff shall fail to make return of any execution that shall come to his hands, issuing from the clerk of the county or clerk of the district court on or before the second day of the term, to which said execution is made returnable, judgment may be rendered against such sheriff for the amount of money and cost of said execution.
At the passage of the acts of 1787 and 1803, the judges of the then superior court possessed and exercised, in the character of judges and chancellors, all legal and equitable jurisdiction, not conferred upon the county court; the state being divided into three judicial districts in which the courts were held. If, after the passage of the act of 1803, an execution had been issued upon a final decree rendered, by a judge of that court, whilst sitting as chancellor, and placed in the hands of the sheriff, and he failed to return it as by the law directed, — that the sheriff would be liable to judgment in such case, under the act of 1803, none will controvert. But the question recurs, what tribunal would have had the power to render such judgment? We answer, the chancellor, who rendered the decree, and none other; because, by the words of the acts, the execution is made returnable to the term of the court, that rendered the decree, or gave the judgment, from which it issued; and of consequence the court, whether in the character of chancellor or judge, that rendered the decree, or gave the judgment alone, under the act of 1803, could pronounce judgment against the sheriff for such failure.
If, at the passage of the act of 1803, the present chan- *522 eery system had obtained, and the exercise of legal and equitable jurisdiction had been vested then, as now, in different courts, and the court possessing chancery power had given a decree, from which an execution had been issued, and placed in the hands of the sheriff, and which he failed to return, could the complainant in such execution have applied to a judge of common law jurisdiction at a term of his court for a judgment? Certainly not.
By the act of 1809, c 49, the superior court was abolished, and the circuit court system established, with a court of errors and appeals, possessing appellate or other jurisdiction, specified by the act. And by the fourth section of the same act, the circuit judges, in their respective circuits, were invested with original jurisdiction over all matters and causes at common law, or in equity, whereof the superior courts of law and equity then had jurisdiction.
The power to render such a judgment, being at the passage of the' act of 1809, vested in the superior courts, was by the passage of that act, ex vi terminorum, transferred to the judges of the circuit court, whether presiding as chancellors, or as judges of the common law courts.
By the act of 1811, c 72, § 4, the jurisdiction of causes in equity was taken from the circuit courts, and vested exclusively in the court of errors and appeals; and by the seventh section of said act, the court of errors and appeals in exercising such jurisdiction were to be governed by the same rules and regulations and restrictions by which the circuit courts were then governed, and were vested with the same power and authority that the circuit courts then had. The chancery jurisdiction which, by the act of 1811, had been taken from the circuit courts, and vested exclusively in the court of appeals, was, by the act of 1813, c 78, § 3, restored to the circuit courts, which courts from that time until 1827, exercised with the courts of appeal, concurrent chancery jurisdiction with the powers, originally given to the supreme courts.
In 1827, the chancery jurisdiction was taken from the court of appeals, and vested in a distinct and separate chancery court, with all the jurisdiction and authority, that attachr ed to the exercise, of such pow.er jn the previously existing *523 and differently denominated courts; and in which jurisdiction was contained, the authority to render the judgment in the record set forth, and which still continues, unless taken 'away by the act of 1835, c 19, § 6. The caption of that act, is in these words, “an act supplemental to an act, entitled an act to establish circuit courts, passed at the present session of the general assembly.” And the sixth section of said act, provides in substance, so far as it affects the question now under consideration, “that if any officer shall fail to make due and proper return of any execution issued from any court of record in this state, such officer shall be liable to judgment on motion in the circuit court of the county from which the execution issued.
Now does this section of the act of 1835 extend to executions issued from the chancery court, and take from it the jurisdiction to render judgment upon failure of the officer, and transfer that jurisdiction to the circuit court of the county in which the chancery court is held? For if it does, then also, by the same section, is the like jurisdiction taken from this court. That the legislature did not intend to include executions issued from this court, and the chancery court in the sixth section of the act of 1835, c 19, we think apparent. Because, previous to the passage of that act, by the second section of chapter 3, of the act of 1835, the supreme court is invested with such appellate and other jurisdiction, as had been by law, previously conferred on that court; and by the fourth and -thirteenth sections of the act 1835, c 4, the chancellors were vested with all the powers, privileges, and jurisdiction, in all respects, which they then had by the existing laws.
That these respective courts had the power previous to the passage of the above act to render judgment in cases like the one under consideration is well established; and that the legislature at the enactment of these laws, well knew that the supreme and chancery courts, not only possessed, but had frequently ex'ercised such power, we are bound to believe; because, previous to the act of 1835, c 19, the legislature, by the act of 1835, c 6, had abolished the county courts, so far as to hear and determine any pleas, real, personal or mixed, *524 or any causes civil or criminal, wherein a jury trial might be demanded, leaving, them the power still to issue executions from judgments or decrees remaining unsatisfied without the authority to give judgments' upon the failure to return such executions,' and therefore, when the legislature, in the sixth section of the act of 1835, c 19, use the word's, “any execution issuing from any court of record,” for a failure to return which, the officer is liable to judment on motion, in the circuit court of the county, from which the execution issued, we must consider them as referring only to executions issuing from the circuit and county courts.
But if this were not so, still the sixth section of the act of 1835, c 19, does not take from the chancery court the jurisdiction, because the act of 1835, c 4, § 4, 15, giving such jurisdiction to the chancellor is not repealed by the act of 1835, c 19, § 6.
Let the judgment be affirmed.